# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-08497 MMM (VBKx) | Date | January 26, 2010 |
|---|---|---|---|

| Title | *Resmer v. Oversee.net, Inc.* |
|---|---|

| Present: The Honorable | MARGARET M. MORROW |
|---|---|

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **Order to Show Cause Why Action Should Not Be Dismissed for Lack of Subject Matter Jurisdiction**

### I.  BACKGROUND

Plaintiff Stewart Resmer filed this putative class action against defendants Oversee.net, Inc. ("Oversee") and SnapNames.com, Inc. ("SnapNames") for artificially inflating the auction prices of expired domain names. SnapNames, which is wholly owned by Oversee, is the largest online auction site for purchasing expiring domain names.[1] Resmer is a resident of California, Oversee is incorporated and headquartered in California, and SnapNames incorporated and headquartered in Oregon.[2] Plaintiff alleges that he bid for and purchased a domain name on the site for $80, and further that the winning bid would have been $60 but for the "shill bidding" of a SnapNames employee. As a result, Resmer overpaid by $20.[3] The complaint alleges that defendants used shill bidding in approximately 50,000 auctions from 2005 through 2009.[4]

---

[1] Complaint, Docket No. 1 (Nov. 18, 2009), ¶ 2.

[2] *Id.*, ¶¶ 5-7.

[3] *Id.*, ¶¶ 26-31.

[4] *Id.*, ¶¶ 19-20.

Plaintiff seeks to represent two proposed classes. The first, the "global effect" class, is defined as: "All individuals and entities in the United States who bid in any SnapNames.com auction for Internet domain names during the time when SnapNames.com or Oversee.net employees or agents bid without disclosing that fact to the bidders (approximately January 1, 2005) through and including November 4, 2009."[5]

The second proposed class, the "direct effect" sub-class, is defined as: "All individuals and entities in the United States (1) who bid in one or more SnapNames.com auctions for Internet domain names in which a SnapNames.com or Oversee.net employee or agent, including but not limited to the employee known as "halvarez," bid without disclosing that fact to bidders, (2) whose bidding was affected by the employee bidding, and (3) who have not received complete compensation for any damage incurred as a result of the employee bidding."[6]

Plaintiff asserts six state law causes of action: (1) violation of the California Auction Law, California Civil Code § 1812.608(h)(2); (2) various fraud claims under California Civil Code §§ 1572, 1573, 1709, and 1710; (3) violation of California Business & Professions Code § 17200, et seq.; (4) breach of fiduciary duty; (5) fraudulent concealment; and (6) restitution and unjust enrichment. Plaintiff and the proposed classes seek statutory, actual, compensatory, and punitive damages, costs, attorneys' fees, and interest.[7]

The complaint asserts that the court has jurisdiction under 28 U.S.C. § 1332(d), because at least one member of the putative class is a citizen of a state different from defendants, and the amount in controversy, excluding interest and costs, exceeds $5,000,000.[8]

## II. DISCUSSION

### A.   Standard Governing Plaintiff's Pleading of Jurisdiction

As the party invoking federal jurisdiction, plaintiff has the burden of establishing the actual existence of subject matter jurisdiction. See *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). Under CAFA, the initial burden of establishing jurisdiction under § 1332(d)(2) rests on the party invoking jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006). This burden, at the pleading stage, may be met by pleading sufficient facts to show a proper basis for jurisdiction. FED.R.CIV.PROC. 8(a)(1) (a complaint "shall contain a short and plain statement of the grounds upon which the court's jurisdiction depends"); see *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("The prerequisites to the exercise of

---

[5] *Id.*, ¶ 37.

[6] *Id.*, ¶ 37.

[7] *Id.*, ¶¶ 47-94, Prayer for Relief.

[8] *Id.*, ¶ 8.

jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction"). The pleading must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction, and if [it] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities For A Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).

Since subject matter jurisdiction must be affirmatively alleged, courts will not infer allegations supporting the exercise of jurisdiction. See *Watson v. Chessman*, 362 F.Supp.2d 1190, 1194 (S.D. Cal. 2005); see also *Tosco Corp.*, 236 F.3d at 499; *Century Southwest Cable Television, Inc. v. CIIF Assocs.*, 33 F.3d 1068, 1071 (9th Cir. 1994).

### B. Standard Governing Diversity Jurisdiction Under the Class Action Fairness Act

CAFA vests original jurisdiction in district courts to hear civil class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "in which[, *inter alia*,] any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); see also *Luther v. Countrywide Homes Loans Servicing LP*, 533 F.3d 1031, 1033-34 (9th Cir. 2008) ("The Class Action Fairness Act of 2005 § 4(a), 28 U.S.C. § 1332(d)(2), amended the requirements for diversity jurisdiction by granting district courts original jurisdiction over class actions exceeding $5,000,000 in controversy where at least one plaintiff is diverse from at least one defendant. In other words, complete diversity is not required. CAFA was enacted, in part, to 'restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction.' Pub.L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711)").

Under CAFA, the number of members of all proposed plaintiff classes must exceed 100 in the aggregate. 28 U.S.C. § 1332(d)(5)(B). See also *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007) ("As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.' § 1332(d)(5). . . . Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant. § 1332(d)(2)"); *id.* at 1021 n.3 ("The Fifth Circuit characterized § 1332(d)(5) as an 'exception' to CAFA jurisdiction conferred under § 1332(d)(2). . . . We view § 1332(d)(5) somewhat differently. . . . [S]atisfaction of § 1332(d)(5) serves as a prerequisite, rather than as an exception, to jurisdiction under § 1332(d)(2). This distinction is important because, as we address later, there are 'exceptions' to the statute in which jurisdiction otherwise exists under § 1332(d)(2) but the federal courts either *may* or *must* decline to exercise that jurisdiction. See, e.g., § 1332(d)(3)-(4)").

Even if the number of members in the class exceeds 100, the district court "shall decline to

exercise jurisdiction" over a class action in which (a) more than two-thirds of the class members are citizens of the state in which the action was originally filed; (b) plaintiffs seek significant relief against at least one defendant whose conduct forms a significant basis for the claims asserted by the class and who is a citizen of the state in which the action was originally filed; (c) the principal injuries were incurred in the state in which the action was originally filed; and (d) during the three-year period preceding the filing of the class action, no other class action was filed asserting the same or similar allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A). The district court must also decline to exercise jurisdiction over a class action in which two-thirds or more of the class members, and the primary defendants, are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B). Additionally, the district court may decline to exercise jurisdiction over a class action in which greater than one-third but less than two-thirds of the members of the plaintiff class and the primary defendants are citizens of the state in which the action was originally filed based on consideration of six factors.[9] 28 U.S.C. § 1332(d)(3).

### C.   Whether Plaintiffs Have Shown the Necessary Diversity of Citizenship

The complaint alleges that the purported classes "consist of thousands of individuals and other entities."[10] Thus, the minimum class size requirement is satisfied. As for the minimal diversity requirement, the complaint fails specifically to allege the citizenship of Resmer or defendants.[11]

---

[9] The six factors are: "(A) whether the claims asserted involve matters of national or interstate interest; (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States; (C) whether the class action has been pleaded in a manner that seeks to avoid federal jurisdiction; (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." 28 U.S.C. § 1332(d)(3).

[10] Complaint, ¶ 38.

[11] The complaint alleges only that Resmer is a resident of California. (Complaint, ¶ 5.) There is a difference between citizenship and residency. See *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. . . . The natural person's state citizenship is . . . determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. See *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state. See, e.g., *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ('Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile

Allegations regarding the places of incorporation and headquarters of the defendants, however, are sufficient to establish that Oversee is a California citizen, and SnapNames is an Oregon citizen. The minimal diversity requirement is therefore satisfied because plaintiff is either a citizen of California, of Oregon, or of a third state. If plaintiff is a citizen of California, minimal diversity is satisfied because his citizenship is different than SnapNames. If plaintiff is a citizen of Oregon, minimal diversity is satisfied because his citizenship is different than Oversee. Finally, if plaintiff is a citizen of a third state, diversity is satisfied because his citizenship is different than that of both defendants. Stated differently, because the named plaintiff, as an individual, cannot be a citizen of more than one state,[12] diversity must exist between him and at least one of the defendants.

### D.    Whether Plaintiff Has Adequately Alleged an Amount in Controversy That Satisfies CAFA

Another hurdle to establishing jurisdiction under CAFA is a showing that the amount in controversy exceeds $5,000,000, exclusive of interest and costs. "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002)). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (citing *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005) and *Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (emphasis original)).

Plaintiff has alleged that the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.[13] This allegation, unsupported by facts, is not sufficient to satisfy the $5,000,000 amount in controversy requirement. To satisfy his burden of pleading jurisdiction, plaintiff cannot rely only on conclusory allegations. *See Vathana v. Everbank*, No. 5:09-CV-2338-RS, 2009 WL 2941522, *2 (N.D. Cal Sept. 10, 2009) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997)). Plaintiff does not specify the amount of monetary damages sought. "If the jurisdictional amount in controversy is not facially apparent from the complaint, i.e., if the plaintiff has not sought a specific amount in damages or if the amount sought is unclear, then the court must look beyond the facts of the complaint and apply the preponderance of the evidence standard." *Walker v. Motricity Inc.*, 627 F.Supp.2d 1137 (N.D. Cal., 2009). From the limited facts alleged in the complaint, there is significant doubt as to whether the amount in controversy requirement is satisfied. Although plaintiff alleges that the defendants have engaged in shill bidding in approximately 50,000 auctions,[14]

---

often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile')").

[12] *See Williamson v. Osenton,* 232 U.S. 619, 623 (1914).

[13] Complaint, ¶ 8.

[14] Complaint, ¶ 20.

the plaintiff himself suffered a monetary loss of only $20 due to one inflated bid.[15] If $20 is typical of the loss suffered by the winners in the 50,000 auctions, then the total losses at issue would be approximately $1,000,000—far less than the requisite amount. While it is possible that the losses suffered in the 50,000 auctions exceed $1,000,000, plaintiff's complaint does not explain why this is so.

### III.  CONCLUSION

For the foregoing reasons, the court orders plaintiff to show cause on or before **February 8, 2009**, why this action should not be dismissed for lack of subject matter jurisdiction. Failure to respond by **February 8, 2009**, will result in immediate dismissal of the action. Defendants may file a response no later than **February 16, 2009.**

---

[15]Complaint, ¶¶ 30-31.